IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
(Wilkie D. Ferguson, Jr. U.S. Courthouse, 400 North Miami Avenue, Miami, FL 33128)

Ronald Satish Emrit,
   Plaintiff (Pro Se)

v.     C. A. No.:

University of Miami School of Law,
   President of University of Miami,
   Dean of Law School

*************************************************************

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the three co-defendants alleging employment discrimination in the form of the violation of the Americans with Disabilities Act of 1990 (ADA) and the tortious interference with family relations. In bringing forth this complaint, the plaintiff states, avers, and alleges the following:

### I.) NATURE OF THE CASE

1.) If the judge in the present case at bar issues a vexatious litigant order in Southern Florida against the plaintiff, then that would be a "true sign" to the plaintiff that he is too disabled to work in the legal field and that he should just concentrate on his mental health rather than trying to seek employment

in the legal field, practice, or profession by applying for a job as a disabled law professor.

2.) Out of desperation and an abundance of caution, the plaintiff is filing this lawsuit to obtain employment even though he is disabled with bipolar disorder and schizoaffective disorder.

3.) More specifically, the plaintiff is trying to obtain a position of employment as a law professor of Entertainment Law at University of Miami after filling out the application online referred to as AALS.

4.) The plaintiff is trying to buy a house in fee simple absolute perhaps in the Lakewood Ranch neighborhood of Sarasota, Florida.

5.) The plaintiff is trying to buy a house as a tenancy by the entirety or perhaps a tenancy in common rather than a joint tenancy with the right of survivorship with the four unities of time, title, interests, and possession.

6.) The plaintiff is trying to buy a house as a quitclaim deed or a warranty deed with the covenant against encumbrances, and the covenant of title, seisin, and quite enjoyment.

7.) The plaintiff is trying to buy a house as a Bonafide Purchaser for Value (BFP) in a race, notice, or race notice jurisdiction.

8.) In order to pay the property taxes on a house owned in fee simple absolute, the plaintiff argues that he needs a job as a law professor with the University of Miami to pay the property taxes according to ad valorem taxation and the mortgage to avoid a tax sale or foreclosure from the bank as mortgagor regarding a promissory note as commercial paper/negotiable instrument pursuant to Article 3 of UNiform Commercial Code (UCC).

## II.) PARTIES TO THIS LITIGATION

9.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Florida. His current mailing address is 6655 38th Lane East, Sarasota, FL

34243. His cell phone number is currently (703)936-3043 and his primary email address is einsteinrockstar2@outlook.com.

10.) The first defendant is University of Miami School of Law. Their principal place of business and/or nerve center is located at the following address: **University of Miami School of Law,** 1311 Miller Drive, Coral Gables, FL 33146, The email is lawcommunications@law.miami.edu. The phone number for University of Miami Law School is 305-284-6746 and the email is admissions@law.miami.edu.

11.) The second defendant is President of the University of Miami. Their principal place of business and/or nerve center is located at the following address: **University of Miami School of Law,** 1311 Miller Drive, Coral Gables, FL 33146, The email is lawcommunications@law.miami.edu. The phone number for University of Miami Law School is 305-284-6746 and the email is admissions@law.miami.edu.

12.) The third defendant is the dean of the University of Miami School of Law. Their principal place of business and/or nerve center is located at the following address: **University of Miami School of Law,** 1311 Miller Drive, Coral Gables, FL 33146, The email is lawcommunications@law.miami.edu. The phone number for University of Miami Law School is 305-284-6746 and the email is admissions@law.miami.edu.

## III.) JURISDICTION AND VENUE

13.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

14.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

15.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of Southern Florida (as an Article III court) has jurisdiction over this matter even though there is no diversity of jurisdiction between the Plaintiff and the three defendants given that the plaintiff lives in Sarasota, Florida and no longer in Fort Worth, Texas.

16.) As an Article III court, the U.S. District Court for the District of Southern Florida also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause.

17.) Therefore, a federal question is presented by the implication of the black-letter law of the aforementioned federal statutes in addition to the discussion of Constitutional Law provisions.

18.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

19.) Furthermore, the amount in controversy exceeds $75,000 (i.e. $200,000 is more than $75.000), this court has jurisdiction on the grounds of diversity and a federal question presented.

### IV.) STATEMENT OF FACTS

20.) The plaintiff applied for a position of employment online and received a receipt of this employment application in Adobe Acrobat format stating the acronym "AALS" for faculty employment.

21.) The plaintiff mailed paperwork related to his lawsuits to University of Miami School of Law and received response later on in the year 2022 from the University of Miami Innocence Project.

22.) In response to the letters and/or documentation sent to the University of Miami School of Law, it appears as if the president or dean of University of Miami School of Law contacted one of the plaintiff's relatives even though this relative was not listed as a reference or contact regarding any of that paperwork submitted to

University of Miami School of Law.

23.) Some of the paperwork submitted to University of Miami School of Law contained at least one picture of the plaintiff with Gloria Estefan taken in 2005 at Willard Intercontinental Hotel in Washington, D.C, off of Pennsylvania Avenue even though the original CD or picture from Ritz Camera in Bowie, Maryland can not be produced according to the Best Evidence Rule or Original Document Rule of Rule 1002 of Federal Rules of Evidence (FRE).

24.) Nevertheless, the person who took the picture is the plaintiff's former publicist Tamille Hawkins who can authenticate the picture pursuant to Rule 901 of Federal Rules of Evidence even though the plaintiff's manager Richard Shaw passed away in 2006 and can not authenticate any subsequent duplication of the original negatives taken with a Kodak camera and developed at Ritz Camera at Bowie Town Center in Bowie, Maryland.

25.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court can take judicial notice that the plaintiff was wait-listed in 1999 at University of Miami School of Law and was also accepted into Stetson University of DeLand, Florida before attending Saint Thomas University School of Law in Miami Gardens, Florida by Opa Locka Airport.

26.) More specifically, the plaintiff attended Saint Thomas UNiversity to be in close proximity to "Gisela and Eloy," i.e. the aunt and uncle of the plaintiff's former fiance Rachel Barreiro Garcia originally from Las Tunas, Cuba before moving to Barcelona, Spain.

27.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court should take judicial notice that the plaintiff met Rachel Garcia in 1999 at Santiago de Cuba when the plaintiff and his friend Damon Ford stayed at Casa Granda Hotel and the plaintiff's friend Damon Ford was interested in Marena LInares who is now a dental assistant from Tenerife in the Canary Islands.

28.) The plaintiff is trying to obtain a design patent or utility patent for three ideas that have to do with black holes, white holes, and wormholes or Einstein-Rosen bridges in which this would involve a Notice of Allowance (NOA), Request for Continued Examination (RCE), and/or Continued Prosecution Application (CPA)

in addition to an application of 35 USC SEction 101 and the stare decisis of Diamond v. Chakrabarty.

29.) Such an application for a design patent or utility patent would perhaps involve an INternational Application (IA) submitted according to Patent Cooperation Treaty (PCT) and World Intellectual Property Organization (WIPO) and may involve the Office of Initial Patent Examination (OIPE) and Technology Center (TC), the General Agreement on Tariffs and Trade (GATT), World Trade Organization (WTO), Bretton Woods Agreement, Hague-Visby AMendments, and Trade Related Aspects of Intellectual Property (TRIPS) as it relates to compulsory licensing of generic pharmaceuticals.

## V.) COUNT ONE: VIOLATION OF AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

30.) The plaintiff argues that all three defendants are violating the American with DIsabilities Act of 1990 (ADA) by not offering the plaintiff a job as a law professor of entertainment law.

31.) To clarify, the plaintiff argues that John Nash from the movie "A Beautiful MInd" was able to teach because of "white privilege" despite his severe schizophrenia as a disability.

32.) Because the plaintiff is a member of a discrete and insular minority (African-American) which is characterized as a suspect classification, the plaintiff argues that he is entitled to strict scrutiny protection regarding federal black-letter law legislation rather than the lower standards of intermediate scrutiny (citing *Craig v. Boren*) and/or a rational basis test which involves that legislation must be rationally-related to a legitimate government objective

## V.) COUNT TWO: INVASION OF PRIVACY THROUGH FALSE LIGHT

33.) The plaintiff argues that the President or Dean of University of Miami law school committed the invasion of privacy through false light by contacting the plaintiff's relative as it pertains to unrelated litigation involving Gloria Estefan and Emilio Estefan presided over by Judge Federico Moreno involving Alex Garcia Enterprises (AGE) and Crescent Moon/Estefan Enterprises off of Bird Road.

34.) As such, the plaintiff argues that his relative has absolutely nothing to do with the plaintiff's litigation in the federal court system and/or business endeavors and therefore the plaintiff's relative should not have been contacted regarding the plaintiff's communication with University of Miami Law School in 2022 and previous to that.

## VI.) COUNT THREE: DEFAMATION (SLANDER)

35.) The plaintiff argues that the President or Dean of University of Miami law school committed the dignitary tort of slander as spoken word by contacting the plaintiff's relative as it pertains to unrelated litigation involving Gloria Estefan and Emilio Estefan presided over by Judge Federico Moreno involving Alex Garcia Enterprises (AGE) and Crescent Moon/Estefan Enterprises off of Bird Road.

36.) While the plaintiff is neither a public figure or limited public figure, the plaintiff argues that he does not know if the concepts of slander per se, slander per quod, libel per se, libel per quod are relevant to this claim.

37.) Furthermore, the plaintiff argues that neither the holdings of *New York Times v. Sullivan* nor *Hustler v. Falwell* are applicable because the plaintiff is neither a public figure nor a limited public figure.

## VII.) COUNT FOUR: NEGLIGENCE

38.) The plaintiff argues that the University of Miami has a duty to treat disabled candidates differently from other applicants because of the Americans with Disabilities Act of 1990 (ADA).

39.) The plaintiff argues that all three defendants breached their duty perhaps under the Carroll Towing Test (citing *United States v. Carroll Towing*) by failing to offer the plaintiff a job as a disabled law professor.

40.) While the plaintiff is not part of a labor union involving teachers or professors, the plaintiff argues that it is an unfair labor practice (ulp) for the University of

Miami to fail to offer him a position of employment as a disabled law professor of entertainment law.

41.) As such, the plaintiff argues that he should be able to have standing to bring this claim before an Administrative Law Judge (ALJ) at U.S. Department of Labor (DOL) under the National Labor Relations Act (NLRA/Wagner Act) or perhaps under the Norris-LaGuardia Act involving "yellow dog contracts."

42.) Because the plaintiff is not part of a labor union such as Screen Actors Guild (SAG) or Major League Baseball Players Association (MLBPA) or NFL Players Association (NFLPA), the plaintiff argues that he is not bound by a collective bargaining agreement (CBA) which would involve grievances for unfair labor practices or ulp's.

## VIII.) COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

43.) The plaintiff argues that it is extreme and outrageous not only for the University of Miami law school to decline to offer him a position of employment as a disabled law professor but also to contact the plaintiff's family member when the plaintiff never listed any references or points of contact regarding possible employment.

44.) If this conduct on behalf of UNiversity of Miami was not intentional, then the plaintiff argues that University of Miami committed negligent infliction of emotional distress since the plaintiff has sustained damages in the form of loss of wages and consortium in addition to the emotional distress of not being offered a position of employment.

45.) The plaintiff was confronted with similar issues involving his employment discrimination lawsuit against Office Depot also in the U.S. District Court of Maryland and Florida in which he told his former employer Lee JOhnson that he was disabled without disclosing the specific characteristics of his bipolar disorder and schizoaffective disorder.

## IX.) COUNT SIX: VIOLATION OF EQUAL PROTECTION CLAUSE

46.) The plaintiff argues that the University of Miami is a government institution and state actor under the municipality of City of Miami and therefore the University of Miami Law School violates the Equal Protection Clause by failing to offer the plaintiff a position of employment as a disabled law professor of entertainment law.

47.) This claim of the violation of Equal Protection Clause involves the Fifth and Fourteenth Amendments to the U.S. COnstitution and applicable provisions from the stare decisis of ***Plessy v. Ferguson*** (separate but equal) and ***Brown v. Board of Education*** overturning the doctrine of separate but equal.

48.) The landmark case of ***Plessy v. Ferguson*** was considered to be a "test case" in which Homer Plessy was a mulatto or quadroon considered to be black because of the "1% drop rule" and Homer Plessy was on his way to Covington, Louisiana.

49.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court should take judicial notice that the plaintiff is African-American because of the 1% drop rule because he is mixed with African-American (maternal) and East Indian from Trinidad and TObago (paternal).

## X.) COUNT SEVEN: VIOLATION OF DUE PROCESS CLAUSE

50.) The plaintiff argues that the University of Miami is a government institution and state actor under the municipality of City of Miami and therefore the University of Miami Law School violates the Due Process Clause by failing to offer the plaintiff a position of employment as a disabled law professor of entertainment law.

51.) The due process claims may involve the applicability of the holdings of ***Matthews v. Eldridge*** involving notice and hearing for benefits/entitlements while other cases such as ***Bowers v. Hardwick*** and ***Romer v. Evans*** have to do with

orientation and **_Griswold v. Connecticut_** applies to contraceptives and due process rights.

## XI.) COUNT EIGHT: VIOLATION OF PRIVILEGES AND IMMUNITIES CLAUSE

52.) The plaintiff argues that he is entitled to the privilege to teach at University of Miami School of Law because he has a juris doctorate degree from Saint Thomas University School of Law and also because his music litigation in the federal court system has been nothing short of historical even if the plaintiff has not won the vast majority of the cases in which a few of the cases ended up in settlement offers.

53.) More specifically, the plaintiff reached a settlement offer with the law firm of Offitt Kurman of Philadelphia, PA on or around 2016 in separate litigation in the states of Oregon involving CD Baby of Portland, Oregon and Disc Makers of Pennsauken, New Jersey with the parent corporation of Audio Visual Labs (AVL) which appears not to be publicly-traded on the New York Stock Exchange (NYSE), Standard & Poor's (S&P 500), Dow Jones Industrial Average (DJIA), or NASDAQ (over-the-counter or OTC market for technology stocks).

54.) Furthermore, the plaintiff reached a settlement with George Arroyo of JP Morgan Chase regarding litigation against Chase Bank presided over by Judge Thomas Barber of Tampa, Florida involving Horus Music Limited of England, TIDAL (Jay-Z's company sold to SQUARE), and Paypal notwithstanding the fact that Judge Thomas Barber ultimately issued a vexatious litigant order in the this litigation.

55.) The plaintiff also reached a settlement with attorney Jessica Friedman of JP Morgan Chase as a stipulation agreement in litigation involving the Greenberg Traurig law firm at Clark County District Court at 200 Lewis Avenue in Las Vegas, Nevada.

56.) The Clark County District Attorney John Giordani prosecuted a case on behalf of the plaintiff in 2016 in which the plaintiff communicated with Steven Wolfson,

Edward Vaquero, Eduardo Moraes, Jennifer Garcia, and Craig Fabert from that office.

57.) Also in 2016, the plaintiff tried to bring a case against Jeremy Alexander and Bianca Ayuso involving issues related to rent and has had several cases at U.S. District Court of Nevada at 333 Las vegas Boulevard South involving Judge Andrew P. Gordon, Judge Richard Boulware, Judge Mirandu Du, Magistrate Judge Peggy Leen, Magistrate Judge Cam Ferenbach, Magistrate Judge Nancy Koppe, and at least once case transferred to Nevada by Judge Beth Bloom of Miami involving the Winter Music Conference and Sonicbids.

## XII.) COUNT NINE: VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

58.) Because the plaintiff argues that a discussion of the violation of his civil liberties is different from a discussion of the violation of his Civil Rights codified in legislation and not Constitution, the plaintiff has to plead this separate count for a violation of Civil Rights Act of 1964.

59.) Accordingly, the plaintiff argues that the University of Miami School of Law has violated his Civil Rights by failing to offer him a position of employment as a disabled law professor of entertainment law substantially similar to the Denny's Civil Rights lawsuits and the lawsuit filed by Miami Dolphins coach Brian Flores because he was denied a position of employment for a head coaching position with the New York Giants.

## XIV.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is seeking damages in the amount of $200,000 in addition to an equitable remedy of an injunction pursuant to Rule 65 of Federal Rules of Civil Procedure (FRCP).  Furthermore, the defendants have violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution in addition to having violated the Privileges

and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution. In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The plaintiff is seeking damages in the amount of $200,000 as punitive, compensatory, treble, actual, presumed, and special damages for the defendants' commission of the tort of negligence in addition to a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA).

B.) The remedy at law in the form of an injunction as an equitable remedy or a declaratory judgment according to Rule 57 of Federal Rules of Civil Procedure (FRCP) would be considered appropriate given that it has been proved that the defendants have violated the plaintiff's rights with regards to the Equal Protection Clause and Due Process Clause (inherent from the Fifth and Fourteenth Amendments) and the Privileges and Immunities Clause (of Article IV, Section 2, Clause 1).

C.) More specifically, the plaintiff is also requesting the equitable remedy that he be offered a position of employment as a disabled law professor at University of Miami School of Law in the field of entertainment law.

D.) To reiterate, the plaintiff is seeking a preliminary injunction pursuant to Rule 65 of Federal Rules of Civil Procedure (FRCP) such that all three defendants are

required to offer him a position of employment even though he is disabled with bipolar disorder and schizoaffective disorder.

Respectfully submitted,

Ronald Satish Emrit

6655 38th Lane East

Sarasota, Florida 34243

(703)936-3043

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com



Satish Emr t
6655 38th lane East
Sarasota Florida 34243

Attn: Clerk of the Court
U.S. District Court of Southern Florida
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Avenue
Miami, Florida 33128